### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: AVANDIA MARKETING,     : | MDL NO. 1871 |
| SALES PRACTICES AND PRODUCTS  : | 07-MD-1871 |
| LIABILITY LITIGATON              : | |
|                                 : | |
| This document relates to:         : | |
| HUMANA MEDICAL PLAN, INC. et al. : | |
|            v.                  : | CIVIL ACTION NO. 10-6733 |
| GLAXOSMITHKLINE, LLC. , et al.,    : | |
|                                 : | |

### MEMORANDUM OPINION

**Rufe, J.**                                                                          **November 24, 2014**

Humana Medical Plan, Inc. has filed this suit to compel GlaxoSmithKline ("GSK") to honor

the reimbursement rights of Medicare Part C providers under the Medicare Secondary Payor Act

provisions of the Medicare Act (42 U.S.C. §1395y(b)). Humana sues on its own behalf and on

behalf of a purported class of other Medicare Part C providers, and has moved the Court to

certify a class. GSK opposes the certification of a class. The Court held oral argument on the

Motion and has carefully reviewed the briefs from both parties. For the reasons set forth herein,

the Motion for Class Certification will be denied.

### I.     BACKGROUND

Humana is a Medicare Advantage Organization ("MAO") which provides insurance to

more than one million Medicare beneficiaries under Medicare Part C.[1] Pursuant to the Medicare

Secondary Payor Act ("MSP Act"), MAOs have the right to assume secondary payor status and

may bill for reimbursement of any conditional payments they make for Medicare benefits if it is

later shown that another plan is primary. Under the MSP Act, product liability tortfeasors (or

---

[1] Medicare Part C allows Medicare enrollees to obtain their Medicare benefits through private insurers
(MAOs) instead of receiving benefits directly from the government. 42 U.S.C. § 1395w-21(a).

their liability insurers) that pay settlement funds to allegedly injured individuals become

"primary plans," and are required to reimburse the MAOs for payments made to treat injuries

arising from the alleged tort.[2] If the primary plan (*i.e.* the settling tortfeasor) fails to make

provision for reimbursement, the secondary (Medicare) payer can seek double damages from the

primary plan.[3]

GSK, the manufacturer of the diabetes medication Avandia,[4] is the defendant in cases

brought by individuals alleging that they suffered personal injury from the use of Avandia. GSK

has settled tens of thousands of such claims. Humana filed suit to enforce its claimed rights as a

secondary payer under the MSP Act, seeking reimbursement from GSK for costs the MAOs

incurred to cover treatment for Avandia-related illnesses and injuries on behalf of settling MAO

enrollees.

Early in the litigation, GSK challenged the MAOs standing to sue to enforce the MSP

Act. This issue was resolved in the MAO's favor by the Third Circuit's 2012 ruling.[5] At this

point in the litigation, GSK does not dispute that it becomes the primary insurer when it settles

Avandia claims, and must reimburse the MAO that initially insured the injured claimant. The

reimbursement obligation is generally satisfied by placing an MAO lien on the settlement fund

awarded to the settling claimant.

GSK has provided for payment of many settling Avandia claimants' MAO liens through

voluntary private lien resolution programs ("PLRPs"). A typical PLRP caps a MAO's

reimbursement at the greater of some agreed upon percentage of the total lien settlement amount

---

[2] 42 U.S.C. §§ 1395y(b)(2)(B)(ii) and 1395y(b)(3)(A).

[3] *Id.*

[4] The term Avandia will be used to refer to Avandia, Avandamet, and Avandarol, collectively.

[5] *In re Avandia Marketing, Sales Practices and Products Liability Litig.*, 685 F.3d 353 (3d Cir. 2012).

(the adjusted recovery amount) or a percentage of the settling Avandia claimant's gross recovery (the capped lien amount).

Although Humana takes the position that early in the litigation GSK refused to recognize the reimbursement rights of MAOs, the evidence is to the contrary. Even while challenging the MAOs' standing to sue for reimbursement, GSK was setting aside settlement funds for reimbursement of MAOs. When GSK settled the first inventory of cases in the Avandia MDL(The Lanier Law Firm settlement), GSK made provision for payment of MAO liens, setting aside funds pursuant to a PLRP signed by plaintiffs' counsel and 41 MAOs (including Humana). Dozens of Plaintiffs' law firms and 46 MAOs, covering approximately 80% of the MAO market, but not including the largest MAOs, Humana and United Health, entered into other PLRPs before the Third Circuit 2012 ruling on the MAOs' standing, and GSK set aside settlement funds for satisfaction of MAO liens consistent with these agreements.

After the Third Circuit ruled in favor of the MAOs' standing, GSK continued its efforts to provide for repayment of MAO liens from settlement funds. It supported Avandia Special Master Bruce Merenstein's Report and Recommendation in which he recommended, *inter alia*, contacting all MAOs which covered at least one settling Avandia claimant, but which had not asserted any claims to date, to encourage them to voluntarily participate in a newly developed PLRP (the "PTO 176 PLRP"). The Court approved and adopted the Report and Recommendation and entered PTO 176. The PLRP was offered to approximately 104 MAOs, ten of which entered into the PTO 176 PLRP. Finally, on November 26, 2013, proposed representative plaintiff Humana and United Health entered into their own PLRP agreement (the Humana/United PLRP), which contains terms more favorable to those MAOs than the agreements negotiated by the other PLRPs. There are now 56 MAOs that have voluntarily

participated in five different PLRPs, and these 56 MAOs cover the vast majority of MAO

enrollees involved in the Avandia litigation. Ninety-four MAOs, collectively holding a small

market share, have not agreed to resolve their liens through a PLRP.[6]

Even if the MAO which provides Medicare coverage to a particular settling claimant

agrees to the terms of a PLRP, each settling claimant must affirmatively agree to resolve any

MAO liens on the settlement proceedings through the PLRP program.  Thus, although the PLRPs

have resulted in the resolution of the vast majority of MAO's MSP Act liens, there are two

categories of unresolved liens: 1) those in which the MAO is not a signatory to a PLRP; and 2)

those in which the MAO is a signatory to a PLRP, but the settling claimant does not opt to

resolve his or her liens through that program.[7] In both instances, GSK is still obligated, under the

MSP Act, to provide for repayment to the MAO for benefits provided to the settling insured for

treatment of Avandia-related injuries. GSK does not dispute this obligation. At issue is whether

GSK is making adequate provision for reimbursements in these two categories of cases.

Humana seeks class certification, arguing that certification will facilitate efficient

resolution of these two categories of unresolved MSP Act claims. GSK opposes class

certification, arguing that Humana has not met the Rule 23 standards for class certification.

## II.     DISCUSSION

Humana asks the Court to certify the following class:

> All Medicare Advantage plans throughout the United States and its territories that paid,
> pursuant to Medicare Part C, for treatment of injuries or illnesses of covered individuals
> who have claimed that Avandia, Avandamet or Avandarol caused the injury or illness,
> and who have entered into agreements with, or settled with, Defendants with respect to

---

[6] GSK notes that many of the 94 MAOs which have not entered into a PLRP also show no interest in advancing their liens through other means. When approached with regard to their liens on particular settlements, some will agree to the terms of a PLRP or negotiate another resolution; but others provide a no-lien statement, release the lien, or simply fail to respond.

[7] Because Humana is a party to a PLRP, its unresolved liens will fall only in the second category.

claims for Avandia-related injury or illness. Excluded are claims that certain MAOs released, pursuant to settlements with certain settling Avandia claimants.[8]

For a class to be certified, a plaintiff must satisfy the four requirements of Rule 23(a): 1) a sufficiently numerous class, such that joinder of all members is impracticable; 2) common questions of law or fact; 3) the claims or defenses of the representative party are typical for the proposed class; and 4) the lead plaintiff can adequately represent the interests of the class. A plaintiff must also satisfy at least one requirement of Rule 23(b). Humana is proceeding under Rule 23(b)(3), arguing that common questions of law and fact predominate over questions affecting only individual class members and that class action is superior to other available methods for adjudicating the controversy.

Rule 23 is not a mere pleading requirement. The Court cannot certify a class unless the party seeking certification can prove, by a preponderance of evidence, that each of the requirements of Rule 23 is satisfied.[9]

1.     *Numerosity*

The Court first asks whether the class is so numerous that joinder of all members is impracticable. Generally, courts find sufficient numerosity exists if the named plaintiff demonstrates that the potential number of plaintiffs is above 40.[10] At the time of the Court's class certification hearing, reimbursement of the MAO liens of approximately 6000 settling Avandia had not yet been provided for, although this number was expected to decrease significantly as PLRPs were offered to these claimants during the claims administration process,[11] and

---

[8] Plaintiff's Clarification of Class Definition, Doc. No. 96.

[9] *In re Hydrogen Peroxide Antitrust Litig.,* 552 F.3d 305, 320 (3d Cir. 2008); *Marcus v. BMW of N. Am., LLC,* 687 F.3d 583, 595 (3d Cir. 2012).

[10] *Stewart v. Abraham,* 275 F.3d 220, 226-27 (3d Cir. 2001).

[11] At the time of the class certification hearing, the two largest MAOs, Humana and United Health Group, had not yet obtained lists of settling claimants those companies insured. Therefore, although these two insurers are

approximately 94 MAOs that cover one or more settling Avandia claimants had not entered into

a PLRP to provide for repayment. Although the number of potential class members continues to

be a moving target, the Court finds that the numerosity factor weighs in favor of class

certification.

     2.    *Commonality*

Second, the Court must examine whether questions of law and fact are common to the

proposed class members. The "common contention . . . must be of such a nature that it is capable

of classwide resolution—which means that the determination of its truth or falsity will resolve an

issue that is central to the validity of each one of the claims in one stroke."[12] As the Supreme

Court noted in *Dukes*, to establish commonality, a group of plaintiffs seeking class certification

must also demonstrate that "their claims can productively be litigated at once" and that class

members are similar enough that common questions are likely to generate common answers.[13]

As Plaintiffs seek class certification under Rule 23(b)(3), the issue of commonality can be

productively discussed in conjunction with Rule 23(b)(3)'s more demanding predominance

requirement, and the Court will address this issue below.[14]

     3.    *Typicality*

Next, the Court must address whether the claims and defenses of the named Plaintiff,

Humana, are typical of the claims and defenses of the class. Plaintiff argues that the claims of

Humana and the claims of the MAO class arise from the same course of conduct; *i.e.* GSK's

---

participants in a PLRP, the PLRP had not yet been offered to the settling claimants insured by them. Counsel
expected that the number of unresolved liens would drop significantly once this was accomplished. However, as
noted above, settling claimants cannot be required to agree to a PLRP, and so, inevitably, there will be some liens
not resolved using this method.

[12] *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

[13] *Id.*

[14] *Danvers Motor Co, Inc. v. Ford Motor Co.*, 543 F.3d 141, 148 (3d Cir. 2008) (internal citation omitted).

failure to reimburse MAOs for payments made to treat Avandia-related injuries. Therefore, its claims are typical of the claims of all potential class members. GSK argues that Humana's claims are not typical because Humana, as one of the two largest providers of Medicare Part C coverage in the United States, had the leverage to negotiate a more favorable PLRP than MAOs that insure far fewer Medicare recipients. As it is now a party to a (very favorable) PLRP, the Court finds that Humana's claims are not typical of the claims of the 94 MAOs that have not yet entered into a PLRP, and may not be typical of other MAOs that have entered into differently structured PLRPs. This factor weighs against class certification.

### 4.   *Adequacy of Representation*

Finally, the Court must be satisfied that the named plaintiff and class counsel can fairly and accurately protect the interests of the class. Although GSK does not challenge counsel's qualifications, it does argue that proposed class counsel has endorsed various PLRPs, with different terms, on behalf of dozens of clients, which may create a conflict of interest in terms of recommending one PLRP over another. Although the record indicates that the 94 MAOs that are not parties to a PLRP have not retained or sought legal advice from proposed class counsel, the Court has no reason to hold that counsel are not capable of adequately representing the absent proposed class members.

With regard to the named plaintiff, GSK argues that, as a participant in a PLRP, Humana is not adequate representative for the proposed class of MAOs, as the majority of unresolved claims involve the 94 MAOs not participating in a PLRP. The Court agrees that because Humana has substantially resolved its own MSP Act claims, it is, at this point the litigation, a poor representative for the class, and especially for the 94 MAOs which have not agreed to participate in a PLRP at all. This factor weighs against class certification.

**D.**     **Rule 23(b)(3)**

To certify a class pursuant to Rule 23(b)(3), the Court must examine whether common

questions of law and fact predominate over questions affecting only individual class members,

and whether a class action is superior to other available methods for adjudicating the

controversy. The predominance criterion in Rule 23(b)(3) is even more demanding than the

commonality requirement in Rule 23(a).[15] The Rule 23(a) standard focuses on whether

answering a legal or factual question as to one class member will answer it as to the others. The

focus of Rule 23's predominance requirement is "on whether the defendant's conduct was

common to all of the class members. . ."[16] The Court must take a close look at whether common

questions predominate over individual ones at this point in this lawsuit,[17]

The Court notes that Humana's theory of liability has changed substantially since it

initially filed this lawsuit and its motion for class certification. Early in the litigation, there were

clearly common questions of law. The central question was whether MAOs had standing to sue

to enforce GSK's MSP reimbursement obligations; this was a legal question, and the answer

would apply to all claims. This question has now been answered by the Third Circuit's 2012

ruling in this case.[21] The parties no longer dispute whether GSK has reimbursement obligations

to MAOs for settling Avandia claimants. GSK concedes that, under the Medicare Act, it does

become a primary payer for certain medical costs upon settlement of an individual plaintiff's

claims, and the MAO becomes a secondary plan, and therefore, GSK is responsible for

reimbursement of certain payments made by the MAOs.

---

[15] *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013).

[16] *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 299 (3d Cir. 2011).

[17] *Id.* (internal quotation marks and citations omitted).

[21] *In re Avandia*, 685 F.3d 353.

As it can no longer able to argue that GSK does not recognize its obligation to reimburse the MAOs under the MSP Act, Humana now argues that the steps GSK has taken to meet its reimbursement obligations are uniform across MAOs, and uniformly inadequate. Thus, although GSK recognizes and has taken steps to meet its obligations under the MSP Act, Humana is still "seeking to establish GSK's liability to all class members from an alleged common practice by GSK in violation of the Medicare Act. . . ."[22]

It is undisputed that, over the course of this litigation, GSK has negotiated with MAOs, individually and in groups, and agreed to various PLRPs, with varying terms, in order to satisfy its MSP Act obligations. Humana acknowledges that where a PLRP applies (*i.e.* in the vast majority of Avandia settlements), GSK has provided for payment of its obligations under the MSP Act, and has no further liability under the Act. GSK argues that, in addition to and in conjunction with PLRPs, it has used varied methods to identify and resolve MAO lien claims. When a claimant may have an MAO lien, GSK has routinely set aside a percentage of settlement funds to cover any MAO lien asserted. Humana does not dispute that GSK is setting aside some percentage of settlement funds for resolution of Medicare liens. Setting aside settlement funds for lien resolution, GSK explains, encourages the settling claimant to enter into a PLRP, if one is offered, or seek a release from their MAO or other resolution of the lien if the MAO is not participating in a PLRP or the settling claimant does not wish to agree to the PLRP. GSK also makes its own efforts to learn what MAO covered the settling claimant at the time of the alleged injury and attempts to make arrangements with the MAO to resolve any liens on terms to which all interested parties can agree. Thus, GSK argues that it takes adequate steps to provide for the satisfaction of its obligations under the MSP Act before releasing all settlement funds to any

---

[22] Doc. No. 75 at 2.

settling claimant.[25] To the extent that it has any liability, GSK argues, that liability would not be class-wise and could not be demonstrated using common evidence.

Notwithstanding GSK's long-standing practice of attempting to work out terms for lien satisfaction with the MAOs that are agreeable to all the interested parties, and its actual satisfaction of a substantial number of liens, Humana asks the Court to find that GSK is currently engaging in a common practice with regard to cases not resolved through the PLRP process, which fails to satisfy GSK's lien obligations. In asserting this argument, Humana appears to argue two inconsistent points.

First, it argues that it can establish liability by simply demonstrating that GSK is not withholding 100% of each MAO enrollee's settlement fund until the MAO liens are resolved. However, Humana puts forth no evidence from which the Court can find that the MSP Act requires GSK to withhold 100% of settlement funds from all settling claimants until MAO liens are satisfied. Although withholding 100% of settlement funds pending resolution of MAO liens may be necessary to meet the MSP Act obligation to provide for reimbursement to the MAO in some individual cases, Humana has not established that GSK's failure to uniformly withhold 100% of settlement funds until MAO liens are resolved renders it liable to the class.

Then, Humana argues that the Court should decide, on a class-wide basis, whether the percentage of the settlement fund GSK actually withholds when an MAO may have a lien is sufficient to satisfy its obligation to provide for repayment under the MSP Act.[28] However, the sufficiency of the set-aside (which is the key to determining GSK's liability) cannot be

---

[25] GSK also notes that many of the 94 MAOs which have not entered into a PLRP show no interest in advancing their liens. When approached with regard to a specific settlement, some will agree to the terms of a PLRP, some will negotiate a resolution outside the terms of a PLRP, some will provide a no-lien statement or release the lien, and some will simply fail to respond.

[28] Humana asserts that GSK is uniformly withholding 20% of each Claimant's gross settlement value for payment of private liens. As GSK does not assert otherwise, the Court will assume, for purposes of this opinion, that this is true.

determined on a class-wide basis. The set-aside may result in the complete satisfaction of some liens (*e.g.* when the settling claimant agrees to a PLRP, the MAO agrees to release or cap its lien, or the amount the MAO expended on Avandia-related injuries was less than the set-aside), but not others. Thus, merely demonstrating the common set-aside percentage is insufficient in one instance would not establish liability class-wide. Instead, the Court would need to conduct an individualized factual inquiry with regard to each settlement in order to determine whether GSK has met its lien obligations with regard to that settling claimant. Thus, neither argument asserted by Humana provides a route for the Court to decide GSK's liability to the proposed class based upon common evidence. Humana's contention that GSK has engaged in a uniform course of conduct, which can be used to establish its liability for violations of the MSP Act class-wide, is not supported by the record. Because questions of fact impacting individual class members in individual settlements will predominate over any common issues of fact or law, the case does not satisfy the class-certification criteria of commonality and predominance.

In addition to evaluating the predominance of common issues of law and fact, Rule 23(b) requires the Court to consider whether a class action is a superior method for efficiently adjudicating the controversy. In deciding whether a class action is a superior method for adjudicating the controversy, the Court must consider: class members' interests in pursuing separate actions rather than a class action; the extent of litigation over the controversy already begun by class members; the desirability of concentrating litigation in one forum; and the likely difficulty of managing a class action.[29]

First, the Court must consider the class members' interests in pursuing separate actions rather than a class action. As noted above, approximately 56 putative class members have

---

[29] Fed. R. Civ. P. 23(b)(3).

entered into five separate PLRP, each with somewhat different terms. Approximately 94 putative

class members have not entered into a PLRP, despite notice regarding the availability of the PTO

176 PLRP, which contained terms similar to those accepted by approximately 44 of class

counsel's MAO clients.[30] These facts suggest that the putative class members may prefer to

make individualized decisions with regard to whether and how to pursue their rights under the

MSP Act, rather than having their liens resolved on a class-wide basis through a representative

plaintiff. Here, where the representative plaintiff, Humana, has already resolved its liens through

a PLRP, on favorable terms that GSK has not offered to other putative class members, the

individual MAOs may have heightened incentive to control their own legal action.

While the named plaintiff, Humana, has litigated the common issues of law, the litigation

is now in a phase that will require discovery into MAO coverage for Avandia-related injuries of

an individual claimant, and GSK's provisions for reimbursement to that MAO, for that claimant,

under the MSP Act. It does not appear that Humana has initiated such discovery yet, and there is

no evidence that such discovery will be more efficient if the class is certified.

Humana argues that for some MAOs, especially those with a small number of Medicare

Part C enrollees, it may not be worth pursuing individual MSP lien claims against GSK.

However, the Court notes that insurers often do take legal action to enforce subrogation rights,

whether for large or small sums, and the Court has heard no evidence suggesting that MAOs will

be deterred from pursuing any rights under the MSP Act in the absence of a class-action,

especially in light of GSK's acknowledgement of its obligations under the MSP Act.

While the Court acknowledges that it may be desirable to concentrate any litigation

regarding MAO liens in this one forum, the outstanding issues are individualized issues of fact,

---

[30] Class counsel was not involved in the development of the PTO 176 PLRP.

not common issues of law or fact, and so the typical concerns about inconsistent legal rulings are not of particular concern here.

The Rule 23(b) factors also weigh against certification of the class.

## IV.    CONCLUSION

Humana has failed to establish that class certification is appropriate in this case. The Court particularly notes that it has failed to prove the requirements of commonality and predominance, and failed to demonstrate the superiority of the class action to adjudicate the controversy. The Court finds that individual issues likely will predominate in the assessment of liability. Accordingly, the Motion for Class Certification is denied. An appropriate order follows.